In the Matter of Beverly ICHINOSE
and Herbert Ichinose, Debtors.

Herbert ICHINOSE and Beverly
Ichinose, Appellees,

v.

HOMER NATIONAL BANK, Appellant.

No. 90–3909.

United States Court of Appeals,
Fifth Circuit.

Nov. 13, 1991.

Before KING, JOHNSON and EMILIO M. GARZA, Circuit Judges.

KING, Circuit Judge:

This adversary proceeding, arising from consolidated bankruptcy filings, presents us with a question of the timeliness of a complaint contesting dischargeability of a debt. The creditor who filed the complaint never moved for an extension of the filing deadline, but relied on deadline-extension orders issued for the benefit of other creditors. The bankruptcy court accepted the complaint and denied a motion by the defendants to dismiss it as untimely. We review the district court's reversal of the bankruptcy court's order.

## I. Background

In March 1988, appellees Beverly and Herbert Ichinose filed individual voluntary petitions under Chapter Seven of the Bankruptcy Code.[1] Appellant Homer National Bank (Homer) was a creditor in both bankruptcy cases (which were later consolidated) with a purported claim against each debtor for over $660,000. Alleging preliminary evidence that the debts owed them were procured through fraud, and therefore were nondischargeable under § 523 of the Bankruptcy Code, several creditors—but not Homer—filed successive applications for extensions of time, pursuant to Bankruptcy Rule 4007(c), in order to investigate the allegations prior to filing a complaint to determine dischargeability pursuant to § 523. Just prior to the close of the extended deadline, and approximately fifteen months after the first scheduled meeting of creditors,[2] Homer filed a complaint seeking to determine dischargeability of the debts under § 523.

The Ichinoses filed a motion to dismiss Homer's complaint as untimely filed. The

John C. Anderson, Brook, Morial, Cassibry, Fraiche & Pizza, Baton Rouge, La., for appellant.

R. Patrick Vance, James E. Bailey, III, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John Herr Musser, IV, New Orleans, La., for appellees.

---

1. The Bankruptcy Code, codified at Title 11 of the United States Code, 11 U.S.C. §§ 101–1330, was enacted by the Bankruptcy Reform Act of 1978, Pub.L. 95–598, 92 Stat. 2549 (1978). Chapter Seven is codified at 11 U.S.C. §§ 701–766.

2. Bankruptcy Rule 4007(c) provides that, in a Chapter Seven liquidation,

[a] complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).... On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

bankruptcy court denied their motion, holding that Homer was entitled to rely on the orders extending the deadline, notwithstanding that Homer itself had never moved for such an order. The bankruptcy court's memorandum opinion of May 24, 1990 refers to a standing policy of that court that it would, as a matter of course, "grant general extensions for filing complaints under § 523 when the facts so warrant." The opinion also states that this policy had been upheld on appeal to the district court, at least " 'where the [bankruptcy] Court indicates that to grant a general extension is, in fact, the intent of the Court.' "

On appeal, the district court reversed the bankruptcy court, holding that Homer's complaint had been untimely filed. The district court based its decision on its review of the record on appeal, finding that there had been a gap of over three months between the expiration of the last deadline granted by the bankruptcy court (November 22, 1988) and the motion for extension of time (March 6, 1989) which resulted in the order relied on by Homer in filing its amended complaint. The Ichinoses had not originally argued this point to the district court on appeal, however. The point they had sought to appeal was whether Homer could rely on a succession of motions for extensions of time which had been filed by other creditors. The district court did not reach this issue, since it found that there had been a gap between the deadlines and thus that the motion relied on by Homer had been untimely filed.

## II. The Law

The purpose of Chapter Seven of the Bankruptcy Code is to give individual debtors a "fresh start," and the heart of this goal is embodied in § 727's discharge provisions. *See, e.g.,* S.Rep. No. 989, 95th Cong., 2d. Sess. 7 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5793. "The discharge provisions require the court to grant the debtor a discharge of all his debts except for very specific and serious infractions on his part." *Id.* Section 727(b) provides that a discharge granted by the bankruptcy court under § 727(a) "dis-

charges the debtor from all debts that arose before the date of the order for relief under this chapter...." 11 U.S.C. § 727(b).

Section 727(b) notes, however, that this general discharge is subject to § 523. Section 523 of the Bankruptcy Code enumerates the various exceptions to discharge (the "specific and serious infractions" noted by the Senate Report). The basis for the complaint in this case was that the debt had been procured through fraud.

> A discharge under section 727 ... does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

In order to determine the dischargeability of a debt under § 523, a creditor must follow the process outlined in Rule 4007. Rule 4007(c) provides that, in a Chapter Seven liquidation,

> [a] complaint to determine the dischargeability of any debt pursuant to § 523(c) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).... On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be made before the time has expired.

Rule 4007(c)'s deadline for filing a complaint or motion must be interpreted with the aid of Rule 9006, which governs the computation of time under the Bankruptcy Rules. Rule 9006(b)(3) permits the enlargement of time for taking action under Rule 4007, "only to the extent and under the conditions stated in [that] rule[ ]." This strict limitation on the extension of time reflects the overall goal of the bankruptcy process to provide individual debtors a fresh start. Consequently, any exceptions to discharge must be filed within a strictly

enforced time limit. *See, e.g., Neeley v. Murchison,* 815 F.2d 345 (5th Cir.1987) (enforcing the Rule 4007(c) time limitation even given the failure of the court clerk's office to provide notice of the deadline date, as required by the rule).

### III. Overview

Homer argues that we should reverse the district court for any of three reasons. First, Homer contends that it properly relied on the deadline-extension orders issued by the bankruptcy court, notwithstanding that they were issued on motions of other creditors. Second, Homer asserts that the bankruptcy court's order can be upheld alternatively as a proper exercise of that court's equity powers. Finally, Homer disputes the appealability of the bankruptcy court's order.

The Ichinoses respond that the Bankruptcy Code and Rules do not permit a creditor to rely on extensions obtained on motions of other creditors. They also point out the obvious flaws in Homer's two alternative arguments.

We conclude that the orders on which Homer purports to have relied do not support the interpretation it seeks to impose on them. The language and context of the orders clearly demonstrate that their applicability was limited to the parties on whose motions they were issued. Since the bankruptcy court's practice of granting general extensions was not reduced to writing, Homer's reliance on it was misplaced. Consequently, we do not reach the question of whether the Bankruptcy Code and Rules would support reliance by one creditor on a deadline-extension order issued on the motion of another, if that order was actually intended to apply to all creditors. We dispense summarily with Homer's two alternative arguments, finding them spurious and unwarranted.

### IV. Homer's Reliance on Other Creditors' Motions

Homer's argument, seeking to overcome the district court's judgment on appeal ordering dismissal of Homer's § 523 complaint, depends on three steps. First, Homer must demonstrate that the bankruptcy court issued a seamless series of deadline-extension orders. Next it must prove that the orders in this case were intended to operate as general extensions—applicable to all creditors, not just those on whose motions they were issued. Finally, if the first two steps are met, Homer must show that the Bankruptcy Code and Rules permit such a general extension.

#### A. The District Court's Opinion and the Missing Order

The district court opinion reversing the bankruptcy court's order rested on a missing link in the chain. The district court found that the last deadline resulting from a timely motion to extend expired on November 22, 1988. Consequently, the order on which Homer relied was the result of an untimely motion, filed March 6, 1989. Since the district court found that there had not been a complete chain of timely motions and orders extending the deadline, it did not reach the issue, urged by Homer there as well as here, of whether the orders extending the deadline ran to the benefit of all creditors or solely to those who filed motions seeking extension. According to the district court's holding, the order relied on by Homer was invalid even as to the moving party.

On appeal to a district court from a bankruptcy court's ruling, the appellant has the initial responsibility to designate the relevant items to be included in the record on appeal. This list of designated items must be served on the appellee. *See* Bankruptcy Rule 8006. The appellant does not have the final word on the designation of items to be included, however. "[A]fter the service of the statement of the appellant the appellee may file and serve on the appellant a designation of additional items to be included in the record on appeal...." *Id.* The record on appeal will include the items designated by both parties.

In this case, both the appellant's original designation and the amended designation of items to be included in the record on appeal were submitted by the

appellants, the Ichinoses. The docket sheet does not indicate that Homer, as appellee from the bankruptcy court, ever submitted a designation of additional items to be included. Whether or not Homer did so, it is clear that Homer had the burden of ensuring that the record on appeal included all of the items relevant and necessary to its position. Homer failed to fulfill this responsibility, and correctly paid the price for its failure at the district court.

On appeal to this court, we asked Homer to supplement the record on appeal with copies of the orders it relied on and the motions on which those orders were issued. The supplement includes a copy of a "motion and order to extend deadline," made by Wallace Rubin; the order is dated November 18, 1988. This order extends the deadline until January 23, 1989. Also included is a copy of an "unopposed motion" and order, dated January 20, 1989, extending the deadline until March 9, 1989. That order states that the deadline "is extended on behalf of RUBIN through and including March 9, 1989." Another order, also issued January 20, 1989, extends the deadline "on behalf of FFCA/IPI Property Company . . . ."

 These orders and motions did not appear in the record on appeal to the district court. Nevertheless, since we requested the record supplement, we consider the orders and motions as part of the record in this appeal. We emphasize, however, that the district court ruled correctly based on the record presented to it, and that Homer cannot complain of the absence of relevant orders when it failed to submit a designation of additional items to be included in the record on appeal. Although we find that the bankruptcy court did issue an unbroken chain of orders, we note that, based on the original record on appeal, we would affirm the district court's ruling for the reasons it provided. Since we asked Homer to supplement the record on appeal, however, we will proceed to the next step.

**B. Generality of the Orders**

The next issue in this case is whether the orders relied on by Homer were intended to run to the benefit of all creditors or solely to the moving party. In *Burger King Corp. v. B–K of Kansas, Inc.*, 73 B.R. 671 (D.Kan.1987), the district court held on appeal that one creditor could not take advantage of a deadline-extension order which had been issued on the motion of another creditor. One of the justifications for this decision was the district court's finding that the bankruptcy court's order was not, on its face, a general extension.

In *Burger King*, the district court declined to impute to the bankruptcy court's order any general extension of the deadline, at least in the absence of a clear statement (presumably in the order) of the need for such a general extension. *Id.* at 674. The court analyzed both the deadline-extension orders and the motions on which they were issued, seeking to determine whether the moving creditors sought, and the bankruptcy court granted, a general extension applicable to all creditors. We engage in a similar analysis in this case.

**1. *Language of the Orders***

To determine whether the orders granted general extensions or merely allowed a specific party or parties more time, we look first to the language used in the orders. In this case, the chain is made up of five orders. The early orders (dated June 22, 1988; September 22, 1988; and November 18, 1988) speak in comparatively broad terms, but do not specifically state that the extension is for all creditors. The June 22 orders[3] state that the "court will grant a ninety (90) days [sic] extension of time for filings [sic] complaints." The September 22 order states that "the deadline for filing § 523 and § 727 complaints ... hereby is extended to *NOVEMBER 22, 1988.*" The November 18 order states: "IT IS ORDERED that the last day for filing complaints in the above-captioned consolidated

---

**3.** The June 22 orders were issued prior to the consolidation of the bankruptcy proceedings of Herbert and Beverly Ichinose. Consequently, the same order was entered into each docket and we have two copies of the order.

proceeding be and it hereby is extended sixty days to *JANUARY 23, 1989."*

In contrast, the later orders speak specifically to the party on whose motion the order was entered. There are two January 20 orders extending the deadline to March 9, one on behalf of Wallace Rubin and one on behalf of FFCA/IPI Property Company. Similarly, there is a May 25 order on behalf of Wallace Rubin and an April 5 order on behalf of FFCA/IPI, issued on motions filed March 6 and March 9, respectively. Each of these orders extended the deadline, "on behalf of" the moving party, to June 7.

#### 2. *Moving Parties and Motion Language*

The pattern of language in the orders, from relatively general at the beginning to movant-specific at the end, more or less comports with the patterns of the moving parties and the language in the motions. The early extension orders (dated June 22, 1988 and September 22, 1988) were issued following motions by numerous creditors (but not Homer). The later extension orders (dated November 18, 1988; January 20, 1989; and April 5/May 25, 1989) were all issued following motions by Wallace Rubin and/or FFCA/IPI Property Company. The November 18 order, as far as the record supplement discloses, was issued solely on the motion of Wallace Rubin and begins, "[c]onsidering the foregoing motion of Wallace Rubin," although the language granting the extension is as general as that in the earlier orders. The two pairs of orders, one pair issued on January 20, 1989 and the other on April 5/May 25, 1989, follow a similar pattern, but involve two moving parties (Rubin and FFCA/IPI) each obtaining a separate order.

The November 18 order uses comparatively general language but was issued solely on the motion of Wallace Rubin. Rubin's motion in that instance does not specifically request a general extension. Although it was made only by Rubin, the motion repeatedly refers to "movers" and asks somewhat broadly that "the deadline for filing complaints under Sections 523(c) and 727 be extended by sixty days from November 22, 1988." This language is consistent with that of earlier motions. By contrast, the later motions (those leading to the January 20 and April 5/May 25 orders) request "an Order extending the time for the filing of Section 523/727 Complaints on behalf of [the moving party]...."

#### 3. *The "standing practice"*

█ Homer relies on a "standing practice" of the bankruptcy court—that, in certain cases at least, extensions of time for one creditor will be treated as accruing to the benefit of all creditors—in justifying its reliance on the orders in this case. The language on the face of the orders and the circumstances surrounding their issuance do not evince a general extension, so the propriety of Homer's reliance on this practice is properly presented.

Homer points to no written manifestation of this alleged practice of the bankruptcy court. Since the practice was nowhere reduced to writing, Homer's reliance was misplaced. In the absence of some clearly articulated statement of the practice, there exist no procedural safeguards for the interests of the debtor and the other creditors.[4] In such a circumstance, we cannot find that the deadline-extension orders were properly treated as applying to Homer.

### C. Analysis

█ Homer urges us to hold that the Bankruptcy Code and Rules permit general extensions of time applicable to all creditors. This argument depends on the power of the bankruptcy judge sua sponte to grant an extension to all creditors even if they did not specifically move for such an

---

**4.** This holding comports with our strict approach to § 523 and Rule 4007(c) in *Neeley v. Murchison,* 815 F.2d 345 (5th Cir.1987). In *Neeley,* we observed that "Section 523(c) of the Code, which Rule 4007 is designed to imple-

ment, places a heavy burden on the creditor to protect his rights: a debt is automatically discharged unless the creditor requests a determination of dischargeability." 815 F.2d at 347.

extension pursuant to Rule 4007(c).[5] Although Homer does not direct us to it, § 105 of the Bankruptcy Code is the source of authority to which we would likely be directed for such an argument. Section 105, as amended in 1986, authorizes the bankruptcy court to

> issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Rule 4007(c) permits the extension of time "[o]n motion of any party in interest,"[6] and so arguably comes within the scope of § 105.

While § 105 might arguably authorize a bankruptcy court's general extension of time for all creditors, we need not decide that issue in this case. Such a general extension, to squarely present the question Homer urges, would have to be evident on the face of the order granting it or, if part of a practice of the bankruptcy court, would have to be reduced to writing, presumably in the form of a rule. Here, neither the orders themselves nor the circumstances surrounding their issuance support Homer's reliance. The alleged practice relied on by Homer was not a written court policy or rule. As a consequence, we find it clear that Homer improperly relied on the deadline-extension orders issued by the bankruptcy court in this case.

## V. Homer's Alternative Arguments

### A. Bankruptcy Court's Equitable Powers

■ Homer argues in the alternative that the bankruptcy court's order denying

the Ichinoses' motion to dismiss can be justified as an application of the doctrine of "excusable neglect." Its brief asserts that the doctrine has been explicitly incorporated into Rule 9006(b)(1), which governs the enlargement of time periods set out elsewhere in the Rules. However, the brief fails to mention that Rule 9006(b)(3) even more explicitly states that Rule 9006(b)(1) applies to Rule 4007(c) "only to the extent and under the conditions stated" in the Rule. We held in *Neeley v. Murchison*, 815 F.2d 345, 346 (5th Cir.1987), that Rule 9006(b)(3) excludes the doctrine of "excusable neglect" from Rule 4007(c). Significantly, Homer's brief fails to mention either Rule 9006(b)(3) or *Neeley*.

### B. Appealability of Bankruptcy Court's Order

■ Homer also claims that the bankruptcy court's May 24, 1990 order was not appealable to the district court, since it was not a final order. However, the Ichinoses explicitly stated, in their notice of appeal to the district court, that they sought interlocutory review. The district court, in its order and memorandum opinion, noted that the bankruptcy court's order was not final, and explicitly stated that it was exercising its discretion pursuant to Bankruptcy Rule 8003(c) to grant leave to hear the interlocutory appeal. Homer fails to include any discussion of Rule 8003(c) in its brief. All of the cases it cites deal with final order appeals, not interlocutory appeals. It is quite obviously and necessarily irrelevant to the appealability of an interlocutory order that it is not final; indeed, it could never be both final and interlocutory.

In another facet of its argument, Homer recognizes (without acknowledging the in-

---

**5.** In a typical case, a general extension would most likely have to come from the court sua sponte, since any single creditor lacks the incentive to seek an extension applicable to all creditors. A creditor has an incentive to obtain an exception from discharge solely for its own debt, and not for debts of other creditors. In a proper case, however, the bankruptcy court may wish to protect the interests of all creditors (given evidence of widespread fraud, for example). In such a case, § 105 would likely be

invoked to authorize a general extension, but we emphasize that the question would be presented only if the order granting an extension applies by its own terms to all creditors.

**6.** The Rule also requires that the extension be "for cause," and "after hearing on notice." The motion must be made before the time has expired. Rule 4007(c).

consistency with its prior argument) that the appeal to the district court involved an interlocutory order, but asserts that the district court's grant of leave to appeal was improper. Section 158(a) authorizes a district court to grant leave to appeal an interlocutory order from a bankruptcy court, but does not indicate the standard a district court should use in determining whether to grant leave to appeal. *See, e.g., In re Klein,* 70 B.R. 378, 380 (N.D.Ill.1987). Nonetheless, the vast majority of district courts faced with the problem have adopted the standard under 28 U.S.C. § 1292(b) for interlocutory appeals from district court orders. *Id.; see also In re Neshaminy Office Bldg. Assoc.,* 81 B.R. 301, 302–03 (E.D.Pa.1987); *In re Hunt Int'l Resources Corp.,* 57 B.R. 371, 372 (N.D.Tex.1985). This standard consists of three elements: (1) a controlling issue of law must be involved; (2) the question must be one where there is substantial ground for difference of opinion; and (3) an immediate appeal must materially advance the ultimate termination of the litigation. *Neshaminy,* 81 B.R. at 303.

▮ We have not previously considered whether it is proper for a district court to adopt the § 1292(b) standard for § 158(a) purposes, and we do not do so here. Homer's brief argues that the district court should not have granted leave to appeal in this case, and seems merely to assume the applicability of the § 1292(b) test. Assuming without deciding that the § 1292(b) test applies, we note that this case fits squarely within its borders. The scope of a bankruptcy court's extension of time under Rule 4007(c) constitutes a controlling question of law, and it is one where there is substantial ground for difference of opinion. More importantly, the interlocutory appeal from the bankruptcy court's order "materially advance[s] the ultimate termination of the litigation." *Id.; cf. In re Moody,* 817 F.2d 365, 367 (5th Cir.1987) (defining the relevant jurisdictional unit for purposes of finality analysis under § 158(a)). Homer does not argue that any

other, stricter standard applies to the district court's decision to grant leave to appeal. Consequently, the issue of the proper standard is not properly presented in this case. We simply note that the district court's decision to grant leave to appeal is not subject to any realistic challenge.

▮ Although Homer does not argue the issue, we note that our appellate jurisdiction is limited to final orders and judgments.[7] 28 U.S.C. § 158(d); *In re Greene County Hosp.,* 835 F.2d 589, 591 (5th Cir.1988), *cert. denied,* 488 U.S. 820, 109 S.Ct. 64, 102 L.Ed.2d 41 (1988). Although the bankruptcy court's order was interlocutory when appealed to the district court, the district court's reversal of that order was itself a final order, subject to appellate review here. *In re Phillips,* 844 F.2d 230, 234 (5th Cir.1988). In the language of *Phillips,* the district court's reversal "cured" the interlocutory nature of the bankruptcy court's order, rendering it final for purposes of our review. *Id.* at 235; *see also In re Wood & Locker, Inc.,* 868 F.2d 139, 142 n. 10 (5th Cir.1989). In this case, as a result of the district court's order reversing the bankruptcy court and rendering judgment (dismissing Homer's complaint), there is no further action to be taken by the bankruptcy court, except mechanical entry on the docket that the complaint is dismissed.

### VI. Conclusion

We AFFIRM the district court's judgment reversing the bankruptcy court's order and dismissing Homer's complaint.

---

7. Indeed, Homer could not be expected to dispute the appealability of the district court's or-

der, since Homer seeks to appeal that order.